LEAENO FRANK REED and TEMA ETEUATI,

v.

FIAPAPALAGI ETEUATI, FIAPAPALAGI SEI ETEUATI and
AMERICAN SAMOA GOVERNMENT EMPLOYEES FEDERAL
COLLECTION SERVICES, INC.

_____

LEAENO FRANK REED, Senior Matai of Leaeno Family, for
himself and for the Leaeno Family, Plaintiffs,

v.

TAUTUA TIMA, PETAGA TIMA, FIA HOLL FOLAU
AMEPEROSA, TAUMALA LEAENO, and NATIONAL
COLLECTION SERVICES, INC., Defendants.

High Court of American Samoa
Land & Titles Division

CA No. 63-97
LT No. 17-03

December 13, 2004

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge, and
TAPOPO, Associate Judge.

Counsel: For Plaintiff, Tauivi Tuinei
            For Defendants, Arthur Ripley, Jr.

## OPINION AND ORDER

### Background

These consolidated matters arises out of a dispute concerning a portion of Leaeno family communal land called "Letolo" in the village of Matu`u. In August 1992, following a family funeral, the assembled members of the Leaeno family agreed to lease Letolo to Sei F. Eteuati and Fiapapalagi Eteuati ("the Eteuati lease"), who were living with and rendering services to the Leaeno family.[1]  The family members who signed the Eteuati lease on behalf of the Leaeno family included Taumaia Soi, daughter of the late Leaeno Savali Elia; Lulu Eli, daughter of a former Leaeno titleholder; Saevale Leaeno; Elisa Fiame and Fagafaga D. Langkilde, a lesser *matai* of the Leaeno family. At the time the lease was executed, the senior *matai* title of the Leaeno family was vacant.

After the lease instrument was executed, it was submitted to the Land Commission for review and notice to the public was duly posted. No objections to the lease were raised during the statutory period. The lease was also sent to the Governor's office for gubernatorial approval in accordance with A.S.C.A. § 37.0221. However, then Governor Peter Coleman and his Lieutenant Governor were both off-island and therefore John Ah Sue, Director of the Department of Human Resources, had been appointed Acting Governor, pursuant to A.S.C.A. § 4.0131. Acting Governor Sue formally approved the lease and thereafter the Territorial Registrar recorded it in Lease Agreement, Volume 1992, at page 06.

Shortly after the lease agreement was finalized, the Eteuati's entered into a mortgage agreement with the American Samoa Government Employees Federal Credit Union ("the credit union"), and used the mortgage proceeds to build a house on the land. As a part of the mortgage, the Eteuati's posted the leasehold as security on the loan.

Several years later, the Eteuati's defaulted on the mortgage and the mortgagee exercised its power of sale reserved in the mortgage. On January 5, 1996, an auction was held and Defendant National Collection Services, Inc. ("NCS") purchased the leasehold. Just over a month later, on February 16, 1996, Plaintiff Leaeno Frank Reed ("Leaeno") was awarded the Leaeno *matai* title.

Several years later, in July 2002, NCS entered into an agreement to lease Letolo for three years to Petaga Tima and Tautau Tima ("the Tima

---

[1] Sei Eteuati's father was the pastor of the Matu`u Congregational Christian Church and an earlier Leaeno *sa`o* had assigned the land to his use for many years.

lease"). Nearly a year later, a dispute involving Eteuati family graves on Letolo brought the Tima lease under focus and in May 2003, Leaeno brought suit. After several of Leaeno's early grievances were settled, the main thrust of his concerns became apparent; he believes that the 1992 Eteuati lease is invalid and therefore contends that any interest that NCS and the Tima's have in the land is also invalid.

## Discussion

Defendant Leaeno presents a number of arguments why he believes that NCS and the Tima's do not possess a valid interest in the land called "Letolo." First, he contends that the Eteuati lease, on which NCS and Tima's interest is founded, is void because it was not authorized by a senior *matai*. Second, he maintains that the Eteuati lease is further invalid because it was not approved by the Governor, but instead by an acting Governor. He additionally asserts that the mortgage, under which NCS and then the Tima's gained their interest in Letolo, is non binding because it was not signed by the mortgagor or mortgagees.

## I. Senior *Matai* Authorization

Defendant Leaeno contends that the Eteuati lease is void because no senior *matai* authorized the alienation of family land. Because of this, he asserts, the Eteuati's never had a valid lease on the land and therefore, NCS and the Tima's do not likewise possess a valid interest in the land. Leaeno maintains that a senior *matai* is the only person who may authorize the leasing of family lands. However, he does not offer a suggestion as to what a family should do if the senior *matai* title is vacant, as was the case in the present controversy.

■ We hold that when the *sa'o* position is vacant, other family members may lease communal land to a family member, for financing purposes, if there is a clear consensus of the entire family to commit family land for such purposes. We note that while the land alienation enactments, A.S.C.A. §§ 37.0101 et seq., contemplate a Samoan family acting through its senior *matai* in its land dealings, the statutes are also conspicuously silent in the oft recurring situation where a family is without its senior *matai* for any extended period of time. We reason that communal land is, after all, owned by the family, and when the senior *matai* title is vacant for any extended length of time, the family itself must be able to lease family lands. Unlike Leaeno, we see nothing in the land alienation enactments to prohibit this.

Indeed, in other contexts, the legislature has specifically given effect to *matai* vacancies. A.S.C.A. § 43.1309 states that the *sa`o* (senior *matai*) is the only person who may seek injunctive relief in a dispute concerning family land. However, the statute further provides that if the *sa`o* title is vacant, two blood *matai* male members may apply for injunctive relief. The statute then provides that if the family does not have two blood *matai* male members, any two family members over the age of eighteen may apply for the needed injunctive relief. Therefore, the legislature clearly anticipated that senior *matai* titles may become vacant and that, as a consequence, certain decisions concerning family land must be executed by other family members.

Additionally, A.S.C.A. § 37.1502 provides: "[t]he senior *matai* in charge of communal lands belonging to his family, *or* the male members of the family owning and residing on communal lands . . . shall have the power and authority . . . to execute a separation agreement." (emphasis added). This is another example of the legislature allowing family members other than the senior *matai* to effect a real estate agreement.

Moreover, this court in *Fagasoaia v. Fanene*, 17 A.S.R.2d 91, 94 (Land & Titles Div. 1990), recognized that in the absence of a senior *matai*, other family members may lease communal land to a third party if a clear consensus of the entire family authorizes the lease. And in *Siu v. Pasene*, 3 A.S.R. 336, 339 (Trial Div. 1958), the court held that a family member did not require the consent of the derelict senior *matai*, who not only lived outside the family but was not recognized by the village council, to build his home on family land, "having first had the consent of the various branches of the family."

In the present case, the entire Leaeno family, assembled for a *fa`alavelave* (family affair), came to a clear family consensus to lease the disputed land following a family funeral in August 1992. Family elders, including a lesser *matai*, discussed the principal terms of the lease, and a final decision was made in the midst of a large family gathering. Therefore, we find that a clear family consensus was reached and conclude that the lease transaction, with the endorsement of the Land Commission and approval of the Governor, is valid and binding.

We believe this holding is supported by sound policy. We take judicial notice of the many pending *matai* matters involving ranking *matai* titles within the territory and note that many Samoan families today find their senior *matai* positions vacant for a substantial period of time. It goes without saying that those families must have the ability to finalize land transactions during that period of absence. Life simply cannot come to a

halt the moment a senior *matai* position goes vacant, only to begin again once when that vacancy is filled.

Additionally, if a lease agreement, properly advertised and posted, is not objected to by third parties; is favorably endorsed by the Land Commission as neither contributing to monopolistic land holdings nor being an improvident transaction;[2] is approved by the governor; and then accepted and recorded by the Territorial Registrar - bona fide parties must be given the confidence to move forward with their investment. Allowing a family member - who did not object to the lease during the posting period - to come forward years later and dispute a properly approved land transaction, will substantially lessen the confidence that legitimate parties to a lease have in the binding nature of their contract. A loss in such confidence would surely deter willing investment in needed capital or structural improvements to the land B for fear that those investments will later be lost if the lease is declared invalid.

In sum, we find that an examination of relevant case law, analogous statutory law and appropriate considerations of policy, lead us to conclude that the Eteuati lease was validly entered into by family members pursuant to a clear consensus of the entire family.

## II. Approval by the Acting Governor

A.S.C.A § 37.0204 states in pertinent part: "It is prohibited for any *matai* . . . to alienate such family lands . . . without the written approval of the Governor of American Samoa." Leaeno suggests, without citing to any authority, that we construe this language literally and void the Eteuati lease because an acting Governor, and not the actual Governor, approved the lease back in 1992.

The argument lacks merit. First, A.S.C.A. § 4.0106(d) provides that "in the absence of both the Governor and Lieutenant Governor, the powers of the Governor shall be exercised, as acting Governor, by a person as the law may prescribe." Elsewhere, the American Samoa Code Annotated provides that "[a]uthority but not the responsibility vested in the Governor . . . may be delegated by [the Governor] to other officers and employees of the executive branch." A.S.C.A. § 4.0131. We fail to see why the Governor's authority to approve communal land

---

[2] *See* A.S.C.A. § 37.0203(a). The Land Commission is charged by statute in the first instance with "the duty . . . to prevent the monopolistic ownership of land and improvident alienation of communal lands by those charged with the management and control thereof." A.S.C.A. § 37.0203(c).

leases may not thus be delegable, especially when gubernatorial approval of communal land leases is reliant upon prior Land Commission input. We find Leaeno's argument not persuasive and reject the same. The Eteuati lease is not invalid simply because the acting Governor, rather than the Governor, approved it.

### III. Invalid Mortgage

Leaeno's final argument is that NCS and the Tima's do not have a valid interest in Letolo because the mortgage under which NCS purchased its leasehold in the land is voidable. Leaeno asserts that the mortgage lacks the proper signatures and therefore the credit union did not have a legal interest in the land when the leasehold was sold at auction to NCS in January 1996.

However, the Court already adjudicated this argument in *Am. Samoa Govt. Employees Federal Credit Union/National Collection Services, Inc. v. Eteuati*, HCCA No. 113-96. Under the doctrine of collateral estoppel, a party and his privy is barred from relitigating matters already determined in an earlier proceeding. *Tuitasi v. Lualemaga*, 4 A.S.R. 798, 803 (Trial Div. 1973). Therefore, like his first two arguments, Leaeno's final argument lacks merit. He is simply trying to rehash an issue that this court already considered in an earlier proceeding.

### IV.    Conclusion

The Leaeno family reached a clear family consensus in deciding to lease the land to the Eteuati's, the lease was approved by the Acting Governor and the lease was properly recorded. We conclude that the 1992 Eteuati lease is valid and binding and that Leaeno does not currently possess an interest in that disputed leasehold.

### Order

We so declare and render judgment accordingly.

It is so ordered.